

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-17-00304-CV

IN THE INTEREST OF E.J.P. AND S.H.P., CHILDREN

On Appeal from the 223rd District Court
Gray County, Texas
Trial Court No. 37,365, Honorable Phil N. Vanderpool, Presiding

May 22, 2018

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

C.P., mother of E.J.P. and S.H.P., appeals from the trial court's order in a suit to modify the parent-child relationship. Through two issues, she contends that the trial court abused its discretion by 1) admitting evidence of her current husband's alleged misconduct occurring approximately five years prior to the court's order and 2) ordering her husband to attend Batterers Intervention Program and requiring a hearing to ascertain compliance. We affirm.

*Background*

The children's father, T.P., filed a motion to modify the parent-child relationship on March 30, 2016. In it, he requested that the trial court modify a prior divorce decree. In

his view, the modification was necessary because "[t]he circumstances of the children, a conservator, or other party affected by the order to be modified have materially and substantially changed since the date of rendition of the order to be modified." He also requested that the trial court appoint him "primary joint managing conservator who has the exclusive right to determine the children's residence," and that C.P. have "possession of the children as may be agreed or, alternatively, as may be set by the Court."

A hearing was held by the trial court, and the testimony presented was contradictory. Nevertheless, it included evidence of C.P. marrying or cohabitating with M.P. after divorcing T.P. and evidence of M.P.'s history. That history encompassed drug abuse and trafficking. So too did it depict a history of physical violence directed at his own child and at an ex-girlfriend.

Other evidence indicated that 1) the children of C.P. and T.P. came to fear M.P., 2) M.P. threatened to "rip [S.H.P.'s] bone[s] – kill him and rip his bones out," 3) C.P. told E.J.P. that M.P. threatened to harm E.J.P.'s father, 4) E.J.P. and S.H.P. were being exposed to fighting and yelling in the home, 5) excessive alcohol use was occurring in the home, 6) C.P. would take E.J.P. with her when purchasing alcohol, which sojourns made E.J.P. uncomfortable, 7) M.P. gave S.H.P. a mohawk haircut which was against school policy and caused the boy to feel embarrassment, 8) the children became distraught and unwilling to live with their mother, and 9) M.P. directed obscene finger gestures at the children's grandparents in the presence of the children. The children's therapist also testified and recommended "that M.P. not be allowed to be with the kids unless" he participated in anger management or parenting classes or undergo counseling.

2

At the conclusion of the hearing, the trial court entered the order made subject of this appeal. Through it, the court barred C.P. from allowing the children to be in the presence of M.P. "until [he] successfully completes parenting classes and a Batterers Intervention Prevention Program ("BIPP")."

*Issue One –  Admission of Evidence of Remote Bad Acts*

C.P. initially contends that the trial court erred in permitting M.P.'s prior girlfriend to testify about the physical abuse she suffered when dating him. "Evidence of a prior relationship . . . some 5 years prior was not relevant to the issue of the appointment of the primary conservator," she believed. We overrule the issue.

Implicit and paramount in disputes regarding conservatorship over children are the best interests of the children. TEX. FAM. CODE ANN. § 153.002 (West 2014) (stating that "[t]he best interest of the child shall always be the primary consideration of the court in determining the issues of conservatorship and possession of and access to the child"). Relevant to that inquiry can be the prior bad acts of a parent. Our Supreme Court acknowledged as much in *Danet v. Bhan*, 436 S.W.3d 793 (Tex. 2014). In that case, the Court was reviewing an intermediate appellate court's decision holding the evidence legally insufficient to support a finding that Bhan's appointment as the child's conservator would significantly impair the child's physical health and emotional development. The intermediate court erred in so ruling, according to the Supreme Court. And, in so holding it noted the presence of evidence which included Bhan's "conduct in the more distant past, two or three years before the August 2010 trial, such as her drug use, criminal record, failure to provide stability in the home, and abandonment of the child." *Id.* at 797.

Noting such historic misconduct can certainly be interpreted as the Supreme Court viewing the past bad acts of a prospective custodian as relevant to the issue of custody.

Indeed, our Texas jurisprudence has often observed that past conduct of a parent can be indicative of how a parent will act in the future. *See In re H.B.*, No. 07-16-00100-CV, 2016 Tex. App. LEXIS 6620, at *2-3 (Tex. App.—Amarillo June 22, 2016, no pet.) (mem. op.) (stating that past actions often indicate future conduct and a factfinder may measure a parent's future conduct by his or her past conduct). Furthermore, historic misconduct is especially relevant when it actually corroborates more recent misconduct. *See In re D.L.W.*, No. 07-15-00243-CV, 2015 Tex. App. LEXIS 12372, at *9 (Tex. App.—Amarillo Dec. 4, 2015, no pet.) (mem. op.) (noting that evidence of a parent's prior conduct may be introduced to corroborate evidence of more recent similar conduct); *In re C.E.B.*, 604 S.W.2d 436, 443 (Tex. Civ. App.—Amarillo 1980, no writ) (noting the same).

Admittedly, circumstances in cases such as *Bhan* often concern a parent and the risk he or she may pose to the child. But, the individuals with whom the parent associates and to whom the child is exposed can hardly be ignored. They too may affect the child's well-being. *See, e.g.*, *In re M.R.J.M.*, 280 S.W.3d 494, 502 (Tex. App.—Fort Worth 2009, no pet.) (stating that "[i]nappropriate, abusive, or unlawful conduct by persons who live in the child's home or with whom the child is compelled to associate on a regular basis in his home is a part of the 'conditions or surroundings' of the child's home"). So, just as a parent's history is relevant in deciding matters of custody, the history of those with whom the parent associates and to whom the child is exposed also has relevance. Because it does, the trial court at bar did not abuse its discretion when admitting information of M.P.'s

4

alleged history for physical violence. And, C.P.'s citation to case law involving circumstances unrelated to child custody matters do not sway us to hold otherwise.

### *Issue Two – Order Prohibiting Exposure to M.P.*

C.P. next contends that the "Trial Court abused its discretion by ordering that Appellant's husband attend a Batterers Intervention Program and making compliance subject to a subsequent hearing." We overrule the issue.

The directive in question states:

> IT IS ORDERED that [C.P.] . . . ; her spouse, the subject children [E.J.P.] and [S.H.P.], her agents, servants, employees, attorneys and on those persons in active concert or participation with her or them are permanently enjoined from:

> 1. Allowing and/or permitting or causing, directly or indirectly, [M.P.] to be or remain within three hundred (300) yards of [E.J.P.] and [S.H.P.] when C.P. . . . has possession and at any other times unless and until [M.P.] successfully completes parenting classes and a Batterers Intervention Prevention Program ("BIPP"), which includes a component of anger management, both of which must be Texas Department of Family and Protective Services ("TxDFPS") approved classes and programs. The TxDFPS will not necessarily provide nor conduct the parenting classes or BIPP, but the parenting classes and BIPP will necessarily have TxDFPS "stamp of approval".

> IT IS ORDERED that the completion by [M.P.] of the mandated programs, as hereinabove specified, will be certified to the Court. Upon notice of such successful completion and at a hearing requested by either or both parties or on the Court's own motion, this Court will determine if [M.P.] has successfully completed the ordered classes and programs and determine if the injunction against [C.P.] . . . as set forth above should be "lifted".

As can be seen, nothing within it compels or directs M.P. to undergo parenting classes or a batterer's intervention program. The trial court simply barred a particular group of

5

people from allowing the children to be within a certain distance of M.P. until he completes those programs. M.P. retains the choice of whether or not to attend them. So, C.P. mistakenly argues that the trial court erred in "ordering that Appellant's husband attend" same.

To the extent C.P. suggests that because "the testimony of [M.P.'s ex-girlfriend] formed the substance of the basis for the Court to order that Appellant's husband attend a Batterers Intervention Program, and [the] testimony was irrelevant . . . that provision should be stricken from the Order," we refer her to our disposition of issue one. The ex-girlfriend's testimony was relevant and admissible.

To the extent that C.P. also argues that "there was no basis for the Court to make compliance with such a condition a contingency for any subsequent hearing" and "[e]ssentially, this amounts to and [sic] impermissible compliance hearing, for which there is no basis in the law," we have difficulty in understanding his position. It is clear that a trial court has continuing jurisdiction over child custody matters. *See In re C.R.-A.A.*, 521 S.W.3d 893, 898-99 (Tex. App.—San Antonio 2017, no pet.). Should it issue an order affecting the manner in which custodial rights are exercised until the occurrence of a contingency, it would seem only logical that its continuing jurisdiction authorizes it to monitor whether the contingency occurred. Indeed, a court with continuing jurisdiction over child custody matters may modify its order. *See* TEX. FAM. CODE ANN. § 156.001 (West 2014) (so stating). And, such a modification may be justifiable when it furthers the child's best interest and the circumstances of the child, a conservator, or another party affected by the order have materially or substantially changed. *Id.* §§ 156.001, 156.101 (a)(1). Consequently, we find no legal impediment to the trial court convening a future

hearing to determine whether M.P. successfully completed parenting classes and a batterer's program.  Completing those classes and program may well obviate the need to continue the restriction previously imposed.  Moreover, their successful completion may well be evidence of the changed circumstances which must arise before an order may be modified.

The order in suit affecting the parent-child relationship entered below is affirmed.


Brian Quinn
Chief Justice